ROVNER, Circuit Judge.
On behalf of their son, A.H., Patrick and Melissa Hayden challenge a policy which requires boys playing interscholastic basketball at the public high school in Greens-burg, Indiana, to keep their hair cut short. The Haydens make two principal arguments: (1) the hair-length policy arbitrarily intrudes upon their son’s liberty interest in choosing his own hair length, and thus violates his right to substantive due process, and (2) because the policy applies only to boys and not girls wishing to play basketball, the policy constitutes sex discrimination. The district court rejected both claims and granted judgment to the Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp., 2013 WL 1001947 (S.D.Ind. Mar. 13, 2013). We reverse in part. Because the hair-length policy on its face treats boys and girls differently, and because the record tells us nothing about any comparable grooming standards applied to girls playing basketball, the evidence entitles the Haydens to judgment on their sex discrimination claims.
I.
AH.’s home is in Greensburg, Indiana, a city of approximately 11,500 people in the south-central region of the state. The Greensburg Community School Corporation comprises an elementary school, a junior high school, and a senior high school, which combined have an enrollment of 2,290 students.
The board of trustees that establishes policy for the school district has adopted a provision — -Policy 5511, entitled “Dress and Grooming” — which in relevant part directs the district superintendent to “establish such grooming guidelines as are necessary to promote discipline, maintain order, secure the safety of students, and provide a healthy environment conducive to academic purposes” (R. 81 at 3 ¶ 12); these guidelines are to include dress standards *572 for members of school athletic teams.[1] The district guidelines implementing this directive leave it to the individual principal of each school, in consultation with staff, parents, and/or students, to develop and enforce appropriate dress and grooming policies.
Greensburg Junior High School (which serves students in the sixth through eighth grades) has established an athletic code of conduct which includes the following provision regarding hair styles:
Hair Styles which create problems of health and sanitation, obstruct vision, or call undue attention to the athlete are not acceptable. Athletes may not wear haircuts that include insignias, numbers, initials, or extremes in differing lengths. Mohawks are not acceptable, and hair coloring is not permitted. Each varsity head coach will be responsible for determining acceptable length of hair for a particular sport. Ask a coach before trying out for a team if you have a question regarding hair styles.
R. 81 at 4 ¶ 15; R. 19 Ex. C. Although the record is silent as to the existence and content of a similar provision for athletes at the senior high school, we assume that there is such a provision, as it is undisputed that boys playing on the basketball teams at both the junior and senior high schools are subject to the same restriction on hair length. (When this litigation commenced in 2010, A.H. was enrolled at the junior high school, which likely explains why the parties omitted mention of a comparable senior high school policy.)
Stacy Meyer, the head varsity basketball coach at Greensburg High School, has established an unwritten hair-length policy which applies to the boys basketball teams. That policy provides that each player’s hair must be cut above the ears, eyebrows, and collar. Coach Meyer has explained the policy as one that promotes team unity and projects a “clean cut” image. The boys baseball teams have a similar hair-length policy, whereas the boys track and football teams do not. No girls athletic team is subject to a hair-length policy. We are told that both boys and girls teams are subject to broader grooming policies (more on that below), but neither the briefs nor the record shed any light on the content of those policies.
A.H. is seventeen years old and currently is a junior in high school. He wishes to play basketball, but he also wishes to wear his hair longer than the hair-length policy permits. During the 2009-2010 school year, when he was in the seventh grade, A.H. cut his hair in compliance with the policy 'so that he could play for the junior high school boys team, but he “didn’t feel like himself’ with the short haircut. R. 81 at 6 ¶ 26. The following year, he declined to cut his hair and his parents protested the hair-length policy as unconstitutional. He was permitted to practice with the boys team while the school and district entertained the objection. But the school principal and district superintendent ultimately sustained the policy and, when A.H. refused to cut his hair, he was removed from the team. His maternal grandparents subsequently assumed guardianship of A.H. and he relocated to their school district — Northern Wells Community Schools in Ossian, Indiana, in the northeastern portion of the state — in the hope that he would be permitted to play basketball without cutting his hair; but his new school did not permit him to play that year.
*573 In the Fall of 2011, the guardianship was terminated and A.H. returned to Greensburg to begin his freshman year at Greensburg High School. He qualified for the freshman boys basketball squad and agreed to comply with the hair-length policy in order to play.
In the Fall of 2012, when A.H. again tried out for the boys team, his hair was longer than the hair-length policy allowed, and he was reminded that he would have to comply with the policy in order to practice with the team. Shortly thereafter, A.H. again took up residence with his maternal grandparents and attended Norwell High School in Ossian. He remains enrolled at Norwell High School to date, but his parents have indicated that they may allow him to return to Greensburg. A.H.’s intent, however, is to continue wearing his hair longer than the hair-length policy allows, and there is no question that this would disqualify him from playing on the boys basketball team.
After A.H. refused to cut his hair and was removed from the boys junior high school basketball team in the Fall of 2010, his parents sued the Greensburg Community School Corporation, its governing school board, and various district and school officials, alleging that the hair-length policy violated multiple state and federal constitutional and statutory provisions. After the district court denied the Haydens’ request for preliminary injunc-tive relief barring enforcement of the policy, Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp., 2011 WL 2960267 (S.D.Ind. July 19, 2011), the parties filed cross-motions for summary judgment. Those motions were denied without prejudice after the parties agreed to submit the case to the district judge for final resolution on a set of stipulated facts. R. 75, 85. As we noted at the outset, the Haydens contended that the hair-length policy violated AH.’s right to substantive due process and constituted impermissible sex discrimination.[2]
The court rejected the Haydens’ substantive due process claim. The court acknowledged that one’s choice of hairstyle is an element of liberty protected by the Fourteenth Amendment. 2013 WL 1001947, at *7 (citing, inter alia, Holsapple v. Woods, 500 F.2d 49, 51-52 (7th Cir.1974) (per curiam)). But the court also recognized that public schools have the authority to enact and enforce dress and grooming policies. Id. (citing, inter alia, Blau v. Fort Thomas Pub. Sch. Dist., 401 F.3d 381, 394 (6th Cir.2005)). Moreover, schools may condition participation in interscholastic sports upon a greater degree *574 of regulation than that imposed on students generally, id. (citing Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 657, 115 S.Ct. 2386, 2393, 132 L.Ed.2d 564 (1995)). This court had made that very point in sustaining the constitutionality of a random drug testing regime imposed on interscholastic athletes, citing grooming codes as one example of the range of permissible regulations to which such athletes may be subject. Id. at *8 (citing Schaill by Kross v. Tippecanoe Cnty. Sch. Corp., 864 F.2d 1309, 1318-19 & n. 9 (7th Cir.1988)). Implicitly rejecting the Haydens’ contention that hairstyle is a fundamental right, the district court indicated that the Haydens bore the burden of showing that the hair-length policy is completely arbitrary and lacking any rational connection to a legitimate government interest. Id. The policy is not arbitrary, in the district court’s view: it “is rationally related to the legitimate school interest of advancing an image of ‘clean cut boys’ and uniformity for sake of team unity.” Id. (citing, inter alia, Kelley v. Johnson, 425 U.S. 238, 248-49, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976) (sustaining hair-length policy for male police officers)).
The court was no more persuaded that the hair-length policy constitutes sex discrimination in contravention of either the equal protection clause of the Fourteenth Amendment or Title IX of the Education Amendment Acts of 1972 (since renamed the Patsy Mink Equal Opportunity in Education Act), 20 U.S.C. § 1681(a). To establish an equal protection violation, the court noted, the Haydens were required to show not only that the hair-length policy has a discriminatory effect but that it manifests a discriminatory intent, that is, an intent to treat A.H. differently because of his membership in a particular group (male athletes). 2013 WL 1001947, at *9-10. The court believed that the Haydens had not offered evidence of discriminatory intent. Whereas the Haydens focused on the fact that “the mandatory haircut policy is not applied to any girl trying out for any sport,” id., at *9, what the court found relevant is that the policy applies only to some rather than all male athletes:
The Haircut Policy applie[s] only to those male athletes who play[ ] basketball under Coach Meyer. It d[oes] not apply to male athletes who play[ ] sports other than basketball, such as football, track, or wrestling. Simply put, the Policy is not based on unlawful gender classifications.
Id., at *10. The court found the Title IX claim doomed for the same reason. A private claim for damages under Title IX requires proof that the defendant intended to discriminate against the plaintiff on the basis of sex. See id. (citing Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp., 551 F.3d 599, 605 (7th Cir.2008)). Because the hair-length policy did not apply to male athletes as a class, it did not, in the court’s view, discriminate on the basis of sex. Id.
II.
A. Substantive Due Process
The Haydens contend that A.H. has a fundamental liberty interest in wearing his hair at the length of his choosing and that the hair-length policy, by compelling him to forgo that liberty and keep his hair short if he wishes to play interscholastic basketball at Greensburg High School, violates his Fourteenth Amendment right to substantive due process. See, e.g., Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997) (“The [Due Process] Clause ... provides heightened protection against government interference with certain fun *575 damental rights and liberty interests.”).[3] Officials bear a heavy burden of justification for curtailing a right that qualifies as fundamental. See Reno v. Flores, 507 U.S. 292, 301-02, 113 S.Ct.. 1439, 1447, 123 L.Ed.2d 1 (1993) (infringement must be narrowly tailored to serve a compelling state interest) (collecting eases). The Haydens’ contention that wearing one’s hair in a length and style of one’s choosing constitutes such a right is grounded in this court’s decisions in Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir.1969); Crews v. Clones, 432 F.2d 1259, 1263-64 (7th Cir. 1970); Arnold, v. Carpenter, 459 F.2d 939, 941-42 (7th Cir.1972); and Holsapple v. Woods, supra, 500 F.2d at 51-52. Breen held that “[t]he right to wear one’s hair at any length and or in any desired manner is an ingredient of personal freedom protected by the United States constitution,” and that “[t]o limit or curtail this or any other fundamental right, the state has a ‘substantial burden of justification.’ ” 419 F.2d at 1036 (quoting Griswold v. Connecticut, 381 U.S. 479, 503, 85 S.Ct. 1678, 1692, 14 L.Ed.2d 510 (1965) (White, J., concurring)); see also Crews, 432 F.2d at 1263 (“In Breen we held that plaintiffs right was of a high order of importance.”).
The notion that one’s hair length is an aspect of personal liberty so important that it constitutes- a fundamental right is hard to square with the Supreme Court’s later opinion in Glucksberg, which describes fundamental rights as those which are “deeply rooted in this Nation’s history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.” 521 U.S. at 720-21, 117 S.Ct. at 2268 (internal quotation marks and citations omitted). The Court in Glucksberg noted that in addition to the freedoms expressly protected by the Bill of Rights, it had held the due process clause to protect such non-enumerated rights as “the rights to marry, to have children, to direct the education and upbringing of one’s children, to marital privacy, to use contraception, to bodily integrity, and to abortion.” Id. at 720, 117 S.Ct. at 2267 (citations omitted). The Court called for the “utmost care” in adding to this short list of fundamental rights, “lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the Members of this Court.” Id. at 720, 117 S.Ct. at 2268; see also Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). Our post-Glucksberg cases have repeatedly taken note of, and heeded, this advice. See, e.g., Park v. Indiana Univ. Sch. of Dentistry, 692 F.3d 828, 832 (7th Cir.2012); Khan v. Bland, 630 F.3d 519, 535 (7th Cir.2010); Hanson v. Dane Cnty., Wis., 608 F.8d 335, 338-39 (7th Cir.2010); Brown v. City of Mich. City, Indiana, 462 F.3d 720, 732-33 (7th Cir.2006).
Breen and its progeny certainly remain valid for the proposition that the manner in which, an individual wears his hair is a cognizable aspect of personal liberty; the Supreme Court itself assumed as much (without so deciding) in Kelley v. Johnson, supra, 425 U.S. at 244, 96 S.Ct. at 1444. See Pence v. Rosenquist, 573 F.2d 395, 399-400 & n. 7 (7th Cir.1978) (choice of appearance is an element of liberty subject to regulation which has rational relationship with legitimate public purpose); see also Rathert v. Village of Peotone, 903 F.2d 510, 514 (7th Cir.1990). But there can be no doubt that the Breen line of cases has been circumscribed by Glucksberg to the extent Breen held that *576 one’s hair length implicates a fundamental right.
Although hair length is not a fundamental right, there is a residual substantive limit on government action which prohibits arbitrary deprivations of liberty by government. See Glucksberg, 521 U.S. at 728, 117 S.Ct. at 2271; Flores, 507 U.S. at 305, 113 S.Ct. at 1448-49; Wroblewski v. City of Washburn, 965 F.2d 452, 458 (7th Cir.1992); Baer v. City of Wauwatosa, 716 F.2d 1117, 1123 (7th Cir.1983). Where a non-fundamental liberty — sometimes described as a “harmless liberty,” e.g., Swank v. Smart, 898 F.2d 1247, 1251 (7th Cir.1990) — is at stake, the government need only demonstrate that the intrusion upon that liberty is rationally related to a legitimate government interest. Glucksberg, 521 U.S. at 728, 117 S.Ct. at 2271; see also, e.g., Goodpaster v. City of Indianapolis, 736 F.3d 1060, 1070-71 (7th Cir.2013); United States v. Moore, 644 F.3d 553, 555-56 (7th Cir.2011); Greater Chicago Combine & Ctr., Inc. v. City of Chicago, Ill., 431 F.3d 1065, 1071 (7th Cir.2005). This rational-basis variant of substantive due process differs little, if at all, from the most deferential form of equal protection review. Wroblewski, 965 F.2d at 458; Pence, 573 F.2d at 398-99. See Idris v. City of Chicago, 552 F.3d 564, 566 (7th Cir.2009) (noting that rational-basis review which applies to all legislation differs from substantive due process); Saukstelis v. City of Chicago, 932 F.2d 1171, 1173 (7th Cir.1991) (noting that residual form of substantive due process may be a misnomer for rights expressly established by Constitution).
The Haydens have made no genuine attempt to demonstrate that the hair-length policy fails rational-basis review. In passing, they have suggested that the defendants have offered no evidence supporting the notion that uniformly short haircuts among members of the boys basketball team promote team unity, as Coach Meyer posited in defense of the policy. But the notion that the school must offer proof bearing out the logic of the policy misconceives the nature of rational-basis review. It is the Haydens who must demonstrate that the hair-length policy lacks a rational relationship with a legitimate government interest; it is not the school district’s obligation to prove rationality with evidence. See, e.g., Srail v. Village of Lisle, Ill., 588 F.3d 940, 946 (7th Cir.2009) (citing Smith v. City of Chicago, 457 F.3d 643, 652 (7th Cir.2006)). The Haydens’ burden in this respect is a heavy one: So long as there is any conceivable state of facts that supports the policy, it passes muster under the due process clause; put another way, only if the policy is patently arbitrary would it fail. ' E.g., F.C.C. v. Beach Commc’ns, Inc., 508 U.S. 307, 313— 14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993); Wroblewski, 965 F.2d at 458. Having made no effort in this regard, the Haydens have waived any argument that they might have made. E.g., Hess v. Ka-noski & Assocs., 668 F.3d 446, 455 (7th Cir.2012). We therefore express no opinion on whether the policy would survive rational basis review. Apart from that, it is not our place to pass judgment on the wisdom of the policy. See Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988); Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).
B.' Equal Protection
A more meritorious contention is that the hair-length policy deprives A.H. of equal protection because it discriminates against him on the basis of his sex. Because A.H. is a boy, he must cut his hair in order to play interscholastic basketball at Greensburg; were he a girl, he would not *577 be subject to that requirement, as the girls team has no hair-length policy. (All school athletes apparently are subject to the ban on hair styles that pose health, sanitation, or vision problems, display initials, numbers, or insignia, incorporate hair coloring, or are otherwise extreme in some way, but the hair-length policy is distinct from these restrictions.) The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074-75, 145 L.Ed.2d 1060 (2000) (per curiam); see also, e.g., Nabozny v. Podlesny, 92 F.3d 446, 453-56 (7th Cir.1996) (applying equal protection clause in school context). Gender is a quasi-suspect class that triggers intermediate scrutiny in the equal protection context; the justification for a gender-based classification thus must be exceedingly persuasive. United States v. Virginia, 518 U.S. 515, 533, 116 S.Ct. 2264, 2275, 135 L.Ed.2d 735 (1996).
Whether and when the adoption of differential grooming standards for males and females amounts to sex discrimination is the subject of a discrete subset of judicial and scholarly analysis. This line of authority — much of it pre-dating the Supreme Court’s decision in Price Water-house v. Hopkins, 490 U.S. 228, 250-51, 109 S.Ct. 1775, 1790-91, 104 L.Ed.2d 268 (1989) (plurality) (employer may not demand that employee’s appearance and deportment match sex stereotype associated with her gender) — is most developed in the employment context, but it has a parallel in the school context as well. See, e.g., Carroll v. Taiman Fed. Sav. & Loan Ass’n of Chicago, 604 F.2d 1028 (7th Cir.1979) (holding that workplace dress code which required women but not men to wear uniforms constituted sex discrimination in violation of Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(l)); id. at 1032 (“So long as [personal appearance regulations] find some justification in commonly accepted social norms and are reasonably related to the employer’s business needs, such regulations are not necessarily violations of Title VII even though the standards' differ somewhat for men arid women.”); Jespersen v. Harrah’s Op’g Co., 444 F.3d 1104, 1110 (9th Cir.2006) (en banc) (majority) (sustaining make-up requirement for female employees in absence of objective evidence that such requirement imposed unequal burden on women) (“We have long recognized that companies may differentiate between men and women in appearance and grooming policies, and so have other circuits. The material issue under our settled law is not whether the policies are different, but whether the policy imposed on the plaintiff creates an ‘unequal burden’ for the plaintiffs gender.”) (citations omitted); id. at 1115-16 (Pregerson, J., dissenting) (contending that make-up requirement constituted the sort of impermissible sex-stereotyping proscribed by Price Waterhouse); id. at 1117 (Kozinski, J., dissenting) (contending that because make-up requirement had no genuine equivalent, in grooming standards for male workers, question of fact presented as to whether standards imposed unequal burdens on men and women);. Barker v. Taft Broadcasting Co., 549 F.2d 400, 401 (6th Cir.1977) (grooming standards imposing different limitations on hair length and style for male and female employees did not constitute sex discrimination absent allegation that standards were subject to unequal enforcement between the sexes); Earwood v. Continental Se. Lines, Inc., 539 F.2d 1349, 1350 (4th Cir.1976) (“sex-differentiated grooming standards do not, without more, constitute discrimination under Title VII of the Civil Rights Act of 1964”); Knott v. Missouri Pac. R. Co., 527 F.2d 1249, 1252 (8th Cir. *578 1975) (“Defendant’s hair length requirement for male employees is part of a comprehensive personal grooming code applicable to all employees. While no hair length restriction is applicable to females, all employees must conform to certain standards of dress. Where, as here, such policies are reasonable and are imposed in an evenhanded manner on all employees, slight differences in the appearance requirements for males and females have only a negligible effect on employment opportunities.”); Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084, 1092 (5th Cir.1975) (en banc) (“It does not appear that defendant fails to impose grooming standards for female employees; thus in this respect each sex is treated equally.... [B]oth sexes are being screened with respect to a neutral factor, i.e. grooming in accordance with generally accepted community standards of dress and appearance.”) (internal quotation marks and citations omitted); Dodge v. Giant Food, Inc., 488 F.2d 1333, 1337 (D.C.Cir.1973) (grooming regulations that prohibited men from wearing long hair and required women with long hair to secure it did not constitute sex discrimination violating Title VII: “Giant enforces strict grooming regulations against both male and female employees.”); Harper v. Edgewood Bd. of Educ., 655 F.Supp. 1353, 1356 (S.D.Oh.1987) (school did not violate students’ equal protection rights by enforcing school board’s dress regulations and prohibiting students from attending school prom dressed in clothing of opposite sex; school dress code did not differentiate based on sex but required students to dress in conformance with community standards); Johnson v. Joint Sch. Dist. No. 60, Bingham Cnty., 95 Idaho 317, 508 P.2d 547, 548-49 (1973) (school dress code that prohibited female students from wearing slacks, pantsuits, or culottes impermissibly discriminated on the basis of sex); Scott v. Bd. of Educ., Union Free Sch. Dist. No. 17, Hicksville, 61 Misc.2d 333, 305 N.Y.S.2d 601, 606-07 (N.Y.Sup.1969) (similarly finding invalid provision of school dress regulations prohibiting girls from wearing slacks except with permission of principal when warranted by cold weather); Jeremiah R. Newhall, Sex-Based Dress Codes and Equal Protection in Public Schools, 12 Appalachian J. Law 209 (2013); Jennifer L. Greenblatt, Using the Equal Protection Clause Posf-VMI to Keep Gender Stereotypes Out of the Public School Dress Code Equation, 13 U.C. Davis J. Juvenile Law & Policy 281 (2009). Whether and to what extent these cases survive Price Waterhouse is a question that we have not yet had occasion to address. The Ninth Circuit has concluded that sex-differentiated grooming standards remain permissible after Price Waterhouse, see Jespersen, 444 F.3d at 1109-12; Nichols v. Azteca Restaurant Enters., Inc., 256 F.3d 864, 875 n. 7 (9th Cir.2001), although it has left the door open to proof that some sex-specific standards may be the product of impermissible sex-stereotyping, Jespersen, 444 F.3d at 1113. But we may assume, without deciding, that this line of authority remains mostly if not wholly unmodified by Price Waterhouse. The relevant and dispositive point here is that this line of precedent has been ignored entirely in this appeal.
The parties have litigated the hair-length policy in isolation rather than as an aspect of any broader grooming standards applied to boys and girls basketball teams. We were told, when we raised the subject at oral argument, that male and female athletes alike are subject to grooming standards; and indeed the parties jointly stipulated below for purposes of the preliminary injunction hearing that whereas only the boys basketball and baseball teams have hair-length policies, the other *579 school athletic teams do have grooming policies. R. 34. But the content .of those grooming policies has never been estabr lished, and the fact that there are grooming standards for both girls and boys teams was not even mentioned in the stipulated facts submitted to the district court for purposes of resolving the case. The stipulated facts reveal only that there is a hair-length policy for the boys basketball team but for not for the girls basketball team (or, for that matter, any other girls team). As such, the stipulated facts indfi cate that a boy wishing to play basketball at Greensburg is subject to a requirement, impinging upon a recognized liberty interest, that a girl is not.
The defendants argue that this is not sex-based discrimination because the hair-length policy applies to only two of the boys athletic teams. Boys wishing to compete on the football or track teams, for example, would be free to do so without having to keep their hair cut short. . As the defendants apparently see it, the fact that the policy does not apply to all boys teams demonstrates that the policy does not categorically discriminate against boys. The district court agreed.
The argument is untenable. That the policy is not universally applied to boys does not negate the fact that it is based on sex: Again, boys wishing to play basketball (or baseball) are subject to a requirement that girls are not. The fact that other boys playing other sports are not burdened by that requirement is neither here nor there. The equal protection clause protects the individual rather than the group, and the individual plaintiff in this case wishes to play basketball. See Bohen v. City of E. Chicago, Ind., 799 F.2d 1180, 1187 (7th Cir.1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970)); see also Engquist v. Oregon Dep’t of Agric., 553 U.S. 591, 597, 128 S.Ct. 2146, 2150, 170 L.Ed.2d 975 (2008); Batson v. Kentucky, 476 U.S. 79, 95-96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986); Shelley v. Kraemer, 334 U.S. 1,- 22, 68 S.Ct. 836, 846, 92 L.Ed. 1161 (1948). He is subject to a burden that a girl in the same position is not.
Equally problematic is the school district’s alternative contention that the sex discrimination claim fails for lack of proof that any such discrimination is intentional. See, é.g., Nabozny, 92 F.3d at 454. This is a case of disparate treatment rather than disparate impact; the' hair-length policy, being applicable only to boys teams, draws an explicit gender line. The intent to treat boys differently from girls is therefore evident from-the one-sided nature of the policy. See Parker v. Franklin Cnty. Cmty. Sch. Corp., supra n. .2, 667 F.3d at 920 (citing, inter alia, Communities for Equity v. Mich. High Sch. Athletic Ass’n, 459 F.3d 676, 694 (6th Cir.2006)); cf. UAW v. Johnson Controls, Inc., 499 U.S. 187, 199, 111 S.Ct. 1196, 1203-04, 113 L.Ed.2d 158 (1991) (“the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect”).
Had this case been resolved on a defense motion for summary judgment (without the parties’ agreement, to submit the case to the court for final judgment based on stipulated, facts) our course would be clear: remand the case for further proceedings on the question of liability. Our rejection of the two rationales that - the district court relied upon in rejecting the Haydens’ equal protection claim would not foreclose the defendants from pursuing alternative arguments for judgment in their favor. In that scenario, the defendants might yet have the opportunity to make an argument they have not made here— namely, that a hair-length policy that ap *580 plies only to male athletes, but which is just one component of a set of grooming standards that impose comparable, although not identical, responsibilities on male and female athletes, does not constitute sex discrimination. The merits of such an argument are not for us to predict. The argument has not been made on appeal and, save for a one-sentence footnote in a motion to dismiss, R. 19 at 22 n. 6, was not made below. We note it merely to make the point that we are neither speaking to that argument here nor foretelling the result in a case in which it is properly asserted and developed.
The problem for the defendants is. that this case was jointly submitted to the district court for final judgment based on a set of stipulated facts. Those facts, if they are read to include the parties’ prior stipulation that both male and female athletes are subject to grooming standards, reveal nothing that would permit a court to assess whether the standards are comparable, notwithstanding the disparity in the hair-length component of the grooming standards.
The Haydens plainly have made out a prima facie case of discrimination. The hair-length policy applies only to male athletes, and there is no facially apparent reason why that should be so. Girls playing interscholastic basketball -have the same need as boys do to keep their hair out of their eyes, to subordinate individuality to team unity, and to project a positive image. Why, then, must only members of the boys team wear their hair short? Given the obvious disparity, the policy itself gives rise to an inference of discrimination. To defeat that inference, it was up to the school district to show that the hair-length policy is just one component of a comprehensive grooming code that imposes comparable although not identical demands on both male and female athletes. In the face of such evidence, the parties might cross swords on such questions as whether community norms dictate separate grooming standards, whether the burdens imposed by those standards on boys and girls are indeed comparable, whether the respective grooming standards are enforced equally, and, irrespective of comparability and even-handedness, whether a sex-specific grooming standard like the hair-length policy is compatible with Price Water-house. But absent any evidence as to the content of the grooming standards that are applicable to female athletes, we are not prepared to simply assume that an otherwise facially-discriminatory rule is justified.
The dissent looks to the parties’ stipulation that there are grooming standards for all teams, coupled with the hair-style provision of the athletic code of conduct, quoted supra at 572, as proof that male and female athletes are in fact subject to comparable grooming standards. Post at 585-87, 587-88. Yet, the mere stipulation that there are grooming standards applicable to girls as well as boys teams does not establish the content of those standards. Nor does the hair-style provision fill that void. That provision proscribes hair styles “which create problems of health and sanitation, obstruct vision, or call undue attention to the athlete”; and it goes on to cite a variety of specific methods of wearing or styling one’s hair that are forbidden to all athletes, including hair coloring, Mohawks, and cuts that display insignia, numbers, initials, or the like. R. 81 at 4 ¶ 15; R. 19 Ex. C. If this is the sum total of the broader grooming code applicable to both male and female athletes. referenced by the parties’ stipulation, the parties themselves have not identified it as such in their supplemental submissions to the court. Nor is it obvious to us that it is, as this provision merely declares certain extreme hairstyles to be off-limits (and no *581 one is suggesting that A.H.’s preferred hairstyle would run afoul of these prohibitions). Beyond that, the policy delegates to each varsity head coach the responsibility to determine “acceptable” hair lengths for his or her respective sport, which does not explain why short hair may be thought necessary for boys who play basketball but not girls.
The fact is, beyond the outer limits articulated in the hairstyle provision, we know virtually nothing about the grooming standards to which female athletes at Greensburg are subject. May they wear earrings or other types of jewelry, for example, and if so, what if any restrictions are imposed on these items? If the goal for all interscholastic athletes is a- neat, clean-cut appearance, which is one of the reasons that Coach Meyer gave for the hair-length policy, are girls required to maintain their hair to particular standards? Beyond the limits on mohawks and other extreme hairdos set forth in the hair-style provision, are there any limits on the manner in which girls may style their hair? Although girls can evidently wear their hair as long as they wish, could a female basketball player wear her hair in an extremely short “buzz-cut,” which might literally qualify as “clean cut” but perhaps not in the sense that Coach Meyer means it and perhaps not in synch with local norms? Surely girls with longer hair must do' something to keep their hair out of their eyes while playing basketball, as the dissent points out. Post at 586 n. 2. But, at the risk of stating the obvious, boys with longer hair could do the same. In fact, male athletes use head and hair bands to do this very thing, as anyone who has watched professional basketball or football games recently can confirm.
Which brings us to community standards. As discussed, a principle that emerges from the Title YII and other cases we have cited is that sex-differentiated standards consistent with community norms may be permissible to the extent they are part of a comprehensive, evenly-enforced grooming code that imposes comparable burdens on both males and females alike. As our colleague’s dissent points out, some of the cases in that line sustained workplace hair-length restrictions on male but not female employees. Post at 586 (citing Barker, 549 F.2d at 401, Knott, 527 F.2d at 1250, and Willingham, 507' F.2d at 1087, 1092). We would reiterate that each of those cases relied on the' fact- that female employees, although not subject to hair-length restrictions, were subject to comparable grooming requirements.[4] It is possible that we might reach the same conclusion here, were the record more developed as to the broader set of grooming rules applicable to both male and female athletes. But it is worth noting that the community standards which may account for the differences in standards applied to men and women, girls and boys, do not remain fixed in perpetuity. See Jespersen, 444 F.3d at 1118 (Kozinski, J., dissenting). It is also worth reiterating that Coach Meyer’s policy prohibits far *582 more than an Age-of-Aquarius, Tiny-Tim, hair-crawling-past-the-shoulders sort of hair style — it compels all male basketball players to wear genuinely short hair. In 2014, it is not obvious that any and all hair worn over the ears, collar, or eyebrows would be out of the mainstream among males in the Greensburg community at large, among the student body, or among school athletes. (Even one or two men on this court might find themselves in trouble with Coach Meyer for hair over the ears.) We certainly agree that the pedagogical and caretaking responsibilities of schools give school officials substantial leeway in establishing grooming codes for their students generally and for their interscholastic athletes in particular. See post at 584-85. But that leeway does not permit them to impose non-equivalent burdens on school athletes based on their sex. So far as this record reveals, that is exactly what the school district has done; and this is the essence of the sex-discrimination claim that the Haydens have been making from the beginning of this case.
What we have before us is a policy that draws an explicit distinction between male and female athletes and imposes a burden on male athletes alone, and a limited record that does not supply a legally sufficient justification for the sex-based classification. We know that there is a rule prohibiting both male and female athletes at the junior high'school from wearing hairstyles that might in some way interfere with their vision or pose some other type of problem; we have assumed that the same rule applies to high school athletes of both sexes. But there is no suggestion that A.H. wishes to wear'his hair in an extreme fashion, let alone that hair worn over a boy’s ears or collar or eyebrows is invariably problematic. The record also tells us that Coach Meyer offered two reasons for the policy: promoting team unity, by having team members wear their hair in a uniform length, and projecting a “clean-cut” image. We may assume that the hair-length rule is consistent with these reasons and that both reasons are legitimate grounds for grooming standards that apply to interscholastic athletes. What is noteworthy, for purposes of the Haydens’ equal protection claim, is that the interests in team unity and projecting a favorable image are not unique to male interscholastic teams, and yet, so far as the record reveals, those interests are articulated and pursued solely with respect to members of the boys basketball team (and baseball team, assuming that the hair-length rule is applied to that team for the same reasons). If there is an argument that the goals of team unity and a “clean-cut” image are served through comparable, albeit different, grooming standards for female athletes, it has neither been advanced nor supported in this case. And the fact that other boys teams are not subject to a hair-length policy casts doubt on whether such an argument could be made.
The parties consented to the entry of final judgment on the record as it stands, and that- record entitles the Haydens to judgment on the equal protection claim. The policy imposes a burden on only male athletes. . There has been no showing that it does so pursuant to grooming standards for both male and female athletes that, although not identical, are comparable. Finally, no rational, let alone exceedingly persuasive, justification has been articulated for restricting the hair length of male athletes alone.
C. Title IX
Section 901(a) of Title IX provides that “[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activ *583 ity receiving Federal financial assistance .20 U.S.C. § 1681(a). There is no dispute that the Greensburg school district receives federal funds and that the district, including its interscholastic athletic programs, is subject to the Title IX’s ban on sex discrimination. See Parker, 667 F.3d at 917-18. Violations of the statute are subject to a private suit for both equitable relief and damages. Cannon v. Univ. of Chicago, 441 U.S. 677, 717, 99 S.Ct. 1946, 1968, 60 L.Ed.2d 560 (1979); Franklin v. Gwinnett Cnty. Pub. Schs., 508 U.S. 60, 75-76, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992).
The Haydens are entitled to judgment on their Title IX claim for the same reasons we have already discussed with respect to the equal protection claim. As noted, the district court disposed of this claim for want of proof that the district harbored any intent to discriminate on the basis of sex: Because the hair-length policy did not apply to all male athletes, the district court did- not view it as sex discrimination at all. 2013 WL 1001947, at *10. We have disposed of that rationale already: The hair-length policy is applied only to the boys team, with no evidence concerning the content of any comparable grooming standards applied to the girls team. The discrimination must also be intentional in order to support a claim for damages under Title IX. E.g., Smith v. Metro. Sch. Dist. Perry Tp., 128 F.3d 1014, 1028 (7th Cir.1997); see also Parker, 667 F.3d at 921-22. We have covered that point already as well. The district court said that Title IX requires proof that the defendant was deliberately indifferent to a known act of sex discrimination. 2013 WL 1001947, at *10. That is one way to establish intent, typically where a school district has been sued for sexual harassment of a student by one of its teachers. See, e.g., Gebser v. Lago Vista Indep. Sch. Disk, 524 U.S. 274, 290-91, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998). The discrimination at issue here takes the form of a school policy. The policy was instigated by Coach Meyer, but he did so pursuant to- the authority expressly delegated to him and other varsity coaches to set hair standards for their respective sports. Lest there by any question that his policy was the district’s, when Mrs. Hayden protested the policy up through the district’s chain of command, the policy was sustained and remained in place unmodified. The intent to discriminate is .thus attributable to the school district. See Parker, 667 F.3d at 921-922.
m.
For the reasons discussed in- this opinion, the district court’s judgment in favor of the defendants on the Haydens’ substantive due process claim is affirmed. However, the judgment in favor of the defendants on the equal protection and Title IX claims is reversed. On the record presented to us, the Haydens have established that the hair-length policy applicable to boys wishing to play basketball im-permissibly discriminates based on sex. The case is remanded to the district court to determine appropriate relief on these claims. The parties shall bear their own costs of appeal.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

. Although Policy 5511 expressly refers only to dress standards for school athletic teams, there is no dispute that it also authorizes the establishment of grooming standards for school athletes.

. Although A.H., at the time of the district court’s ruling, was attending Norwell and not Greenberg High School, the court found that the case was not moot. As the case history indicated, there was a real possibility that A.H. would return to Greensburg; and, given his announced intent to wear his hair longer than the policy permitted, there was also a concrete possibility that the same factual scenario underlying the Haydens’ claims would repeat itself. At the same time, given the relative brevity of the basketball season (November through March), the court believed there would be insufficient time to fully litigate the merits of these claims if and when A.H. returned to Greensburg, tried out for, and was accepted to the boys basketball team. The court therefore saw the case as fitting within the exception to mootness for cases capable of repetition but evading review. 2013 WL 1001947, at *6-7. See, e.g., Crane by Crane v. Indiana High Sch. Athletic Ass’n, 975 F.2d 1315, 1319 (7th Cir.1992). The court added that A.H. also had a claim for compensatory damages based on his involuntary removal from the junior high school boys basketball team in the Fall of 2010 pursuant to the hair-length policy. Id., at *7.
For our purposes, the latter point is sufficient to resolve any concern about mootness. See Parker v. Franklin Cnty. Cmty. Sch. Corp., 667 F.3d 910, 915 (7th Cir.2012).

. The Haydens seek relief for the asserted violations of A.H.’s Fourteenth-Amendment rights to due process and equal protection pursuant to 42 U.S.C. ¶ 1983.

. See Barker, 549 F.2d at 401 (male employees were subject to hair-length restrictions whereas female employees were subject to Yi&ir-style restrictions; no indication the restrictions were enforced unevenly as between the sexes); Knott, 527 F.2d at 1249-50, 1252 (although employer only restricted hair length and styles' of male employees, separate written grooming standards, which were evenly enforced, required employees of both sexes to conform to certain styles of dress); Willingham, 507 F.2d at 1087 (grooming code required both male and female employees who came into contact with public to be neatly dressed and groomed in accordance with standards customarily accepted in the business community).