**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

JOHN DOE, through his mother and next
friend Jane Doe,

     Plaintiff - Appellant,

v.

ROCKY MOUNTAIN CLASSICAL
ACADEMY; NICOLE BLANC,
individually and in her official capacity as
Dean of Students of Rocky Mountain
Classical Academy; CULLEN
MCDOWELL, individually and in his
official capacity as Executive Principal of
Rocky Mountain Classical Academy,

     Defendants - Appellees.

No. 22-1369

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:19-CV-03530-DDD-STV)**
_____

Igor Raykin, Kishinevsky & Raykin, Attorneys at Law, Aurora, Colorado (Michael Nolt, Kishinevsky & Raykin, Attorneys at Law, Aurora, Colorado, with him on the briefs) for Plaintiff-Appellant.

Eric V. Hall, Sparks Willson, P.C., Colorado Springs, Colorado for Defendants-Appellees.
_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.

For the last forty-seven years, the Supreme Court has recognized only one test for determining whether a sex-based classification violates the right to equal protection under the Fourteenth Amendment. In this case, a Colorado charter school urges us to replace that test with another. We decline the invitation.

Like many schools, Rocky Mountain Classical Academy ("RMCA") maintains a dress code. Some provisions of this dress code apply only to boys; some only to girls. Plaintiff John Doe claims RMCA unlawfully discriminates on the basis of sex by prohibiting boys from wearing earrings. Plaintiff also contends that RMCA violated Title IX by retaliating against him for complaining of sex discrimination. Borrowing principles of Title VII law, the district court dismissed Plaintiff's claims because the dress code imposes comparable burdens on boys and girls. But by applying the comparable burdens test instead of intermediate scrutiny, the district court departed from the unambiguous directive of the Supreme Court. We therefore exercise jurisdiction under 28 U.S.C. § 1291 and reverse the district court's dismissal of Plaintiff's sex discrimination claims. We affirm the dismissal of Plaintiff's retaliation claim.

I.

RMCA is a public charter school serving students in grades K–8 in Colorado Springs. Consistent with a Colorado law requiring that all public schools establish a dress code, Colo. Rev. Stat. § 22-32-109.1(2)(a)(J), RMCA adopted a comprehensive dress code that applies to all students.

2

Plaintiff enrolled in RMCA's kindergarten. While attending, Plaintiff wore small, blue stud earrings, prompting Plaintiff's teacher to remind Plaintiff's mother that, "per our dress code, boys [cannot] wear earrings at school." The teacher was correct. Because Plaintiff is a boy, his earrings violated RMCA's dress code:

> **Tattoos and body piercings, other than girls' earrings, are not allowed.** Earrings must be limited to one earring per ear. Large, dangling, or hoop-type earrings are not allowed. **Jewelry other than watches for boys or girls, and small earrings on girls, may not be worn.** This includes bracelets. Bracelets are not allowed. Official RMCA bracelets are allowed to be worn.

(emphasis added). Having received this notice, Plaintiff's mother emailed members of the RMCA Board and suggested that the dress code constituted unlawful sex discrimination. But the Board disagreed, and because Plaintiff continued to wear earrings, RMCA suspended and disenrolled Plaintiff.

Plaintiff sued Defendants in the District of Colorado and sought a preliminary injunction, alleging RMCA violated his Fourteenth Amendment equal protection rights and statutory rights under Title IX. The district court denied Plaintiff's request for an injunction, and Defendants moved to dismiss. The district court granted Defendants' motion, determining that Plaintiff did not state a plausible sex discrimination claim under either the Equal Protection Clause or Title IX and did not state a plausible Title IX retaliation claim. Plaintiff timely appealed.

II.

We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007). In

3

examining a complaint under Rule 12(b)(6), we "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[1] Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (discussing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

## III.

On appeal, Plaintiff contends the district court erred by dismissing his 42 U.S.C. § 1983 equal protection and 20 U.S.C. § 1681(a) Title IX claims.

## A.

For Plaintiff to prevail on his § 1983 equal protection claim, he must show "(1) deprivation of a federally protected right by (2) an actor acting under color of state law." Schaffer v. Salt Lake City Corp., 814 F.3d 1151, 1155 (10th Cir. 2016) (citing D.T. ex rel. M.T. v. Indep. Sch. Dist. No. 16, 894 F.2d 1176, 1186 (10th Cir. 1990)).  Both parties agree that RMCA is a state actor.  So this issue hinges solely on whether Defendants deprived Plaintiff of a right guaranteed by the Fourteenth Amendment's Equal Protection Clause.[2]

---

[1] Although a complaint's sufficiency must generally rest on its contents alone, we may also consider "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). Because the RMCA student handbook falls within this category, we also consider the RMCA student handbook.

[2] Because of the agreement of the parties, we accept for this appeal that RMCA is a state actor.  We express no opinion on whether a public charter school would

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In considering whether a state actor violates the Equal Protection Clause, courts "apply different levels of scrutiny to different types of classifications." Clark v. Jeter, 486 U.S. 456, 461 (1988). For example, while all statutory classifications must be rationally related to a legitimate government purpose, classifications based on race or national origin—or affecting fundamental rights—are subject to strict scrutiny. Id. (citing Loving v. Virginia, 388 U.S. 1, 11 (1967)). Between rational basis review and strict scrutiny "lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex." Id. (citing Miss. Univ. for Women v. Hogan, 458 U.S. 718, 723–24, 724 n.9 (1982); Mills v. Habluetzel, 456 U.S. 91, 99 (1982); Craig v. Boren, 429 U.S. 190, 197 (1976); Mathews v. Lucas, 427 U.S. 495, 505–06 (1976)).

Intermediate scrutiny is not a new standard, and its application is clear in both Supreme Court and Tenth Circuit precedent: courts must evaluate sex-based classifications under intermediate scrutiny. See United States v. Virginia, 518 U.S. 515, 524 (1996) (citing Hogan, 458 U.S. at 724); Free the Nipple-Fort Collins v. City

---

otherwise qualify as a state actor for equal protection. See, e.g., 303 Creative LLC v. Elenis, 600 U.S. 570, 598 n.5 (2023) (accepting the parties' stipulation on an otherwise unresolved issue of law).

of Fort Collins, Colorado, 916 F.3d 792, 799 (10th Cir. 2019).[3]  To survive

intermediate scrutiny, the Government must provide a justification for the sex-based

classification that is "exceedingly persuasive," and that classification must serve

"important governmental objectives" through means "substantially related to"

achieving those objectives.  United States v. Virginia, 518 U.S. at 524 (citing Hogan,

458 U.S. at 724); accord Free the Nipple-Fort Collins, 916 F.3d at 799.  RMCA

employs a sex-based classification: girls can do something boys cannot.

Accordingly, our established precedent required the district court to analyze the dress

code's constitutionality under the intermediate scrutiny framework.

But the district court did not analyze RMCA's sex-based classification under

the traditional intermediate scrutiny framework.[4]  Instead, the district court applied

---

[3] As Defendants identify, our older jurisprudence includes cases in which we permitted schools to impose hair length requirements on male students.  See, e.g., Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971); New Rider v. Bd. of Ed., 480 F.2d 693 (10th Cir. 1973); Hatch v. Goerke, 502 F.2d 1189 (10th Cir. 1974).  These cases are not useful guides: only New Rider considered an equal protection claim, and we analyzed the claim under rational basis review as the Supreme Court had not yet declared sex a quasi-suspect classification requiring intermediate scrutiny.  See Boren, 429 U.S. at 197.

[4] The Supreme Court has held that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings."  Morse v. Frederick, 551 U.S. 393, 394 (2007) (quoting Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986)).  Accordingly, Defendants argue that we should adopt a deferential approach to school dress codes.  But the Supreme Court has already modeled what deference courts owe to a school's sex-based classification: intermediate scrutiny.  Virginia, 518 U.S. at 524 (citing Hogan, 458 U.S. at 724).  Accordingly, courts should only defer to a school's sex-based classification if it serves an "exceedingly persuasive justification" through means "substantially related to" achieving the objective.  Id. (citing Hogan, 458 U.S. at

6

the "comparable burdens" test adopted by the Seventh Circuit in <u>Hayden ex rel. A.H.</u>

<u>v. Greensburg Cmty. Sch. Corp.</u>, 743 F.3d 569, 581 (7th Cir. 2014).  According to

the Seventh Circuit, employers may impose sex-specific dress codes—without

violating Equal Protection—if the codes impose "comparable burdens on both males

and females alike."  <u>Id.</u>  Because the district court found RMCA's dress code

imposed comparable burdens, the district court determined it did not need to analyze

RMCA's sex-based classification under intermediate scrutiny.[5]  <u>Doe v. Rocky</u>

<u>Mountain Classical Acad.</u>, No. 1:19-CV-03530, 2022 WL 16556255, at *5 (D. Colo.

Sept. 30, 2022).

In reviewing a Rule 12(b)(6) motion, we examine whether the complaint states

a claim upon which relief can be granted, accepting all allegations as true and

construing all inferences in the light most favorable to the nonmovant.  <u>Tellabs, Inc.</u>

<u>v. Makor Issues & Rts., Ltd.</u>, 551 U.S. 308, 322 (2007).  The district court concluded

---

724).  Insofar as the district court wished to defer to school policies, it needed to do so within the confines of intermediate scrutiny.

[5] The district court determined:

> It is not entirely clear just how the 'comparable burdens' test applied in <u>Hayden</u> fits into the overarching intermediate scrutiny framework. . .. But the Court need not resolve these questions, because . . . the Court finds that RMCA's prohibition on earrings for male students is part of a comprehensive school dress code that imposes comparable burdens on males and female students, and that it therefore does not constitute sex discrimination.

<u>Doe v. Rocky Mountain Classical Acad.</u>, No. 1:19-CV-03530, 2022 WL 16556255, at *5 (D. Colo. Sept. 30, 2022). !

it could not grant Plaintiff relief because RMCA imposed comparable burdens on girls and boys. <u>Doe</u>, 2022 WL 16556255, at *5. But viewing Plaintiff's complaint through the proper lens of intermediate scrutiny, we hold that Plaintiff has stated a claim upon which relief can be granted because the Complaint does not establish that RMCA has an "exceedingly persuasive justification" for its sex-based classification or that its classification serves important governmental objectives through means substantially related to those objectives. Indeed, at the 12(b)(6) stage, RMCA never had the opportunity to make such a showing.

We do not speculate about what the results might be of a properly conducted intermediate scrutiny analysis. Until RMCA provides a justification for their sex-based classification, we cannot evaluate whether RMCA's justification is "exceedingly persuasive" or whether the dress code's treatment of boys is "substantially related" to their—at this point unstated—objectives. Therefore, this issue was not sufficiently developed such that a court could resolve it in favor of RMCA on a 12(b)(6) motion.[6] The only issue on this appeal is whether Plaintiff stated a plausible claim upon which relief can be granted. And with respect to his

---

[6] The district court recognized that the Seventh Circuit incorporated the notion of comparable burdens into the intermediate scrutiny framework. <u>See</u> <u>Hayden</u>, 743 F.3d at 581. RMCA has taken a different tack on appeal—asserting at oral argument that "comparable burdens lies between rational basis and intermediate scrutiny." We reject RMCA's argument in light of the Supreme Court's clear directive to evaluate sex-based classifications under intermediate scrutiny. <u>Virginia</u>, 518 U.S. at 524 (citing <u>Hogan</u>, 458 U.S. at 724). But in concluding that at the 12(b)(6) stage RMCA never had the opportunity to justify its sex-based classification, we need not—and therefore do not—address whether comparable burdens are relevant to a proper intermediate scrutiny analysis.

§ 1983 equal protection claim, Plaintiff did.  We therefore reverse the district court's

dismissal of Plaintiff's equal protection claim.

B.

We next consider Plaintiff's Title IX sex discrimination and retaliation claims.

Broadly, Title IX prohibits recipients of federal education funding from

discriminating on the basis of sex.[7]  20 U.S.C. § 1681(a).

1.

The parties agree that Plaintiff's sex discrimination claim under Title IX is

subject to the same analysis as Plaintiff's Fourteenth Amendment equal protection

claim.  So, for the same reasons we reverse the district court's dismissal of Plaintiff's

claim of sex discrimination in violation of the Fourteenth Amendment's Equal

Protection Clause, we reverse the district court's dismissal of Plaintiff's Title IX sex

discrimination claim.[8]

---

[7] 20 U.S.C. § 1681(a) provides that "[n]o person in the United States shall, on
the basis of sex, be excluded from participation in, be denied the benefits of, or be
subjected to discrimination under any education program or activity receiving
Federal financial assistance."

[8] Defendants bring two additional, unpersuasive arguments.  First, Defendants
point out that Title IX enumerates certain contexts in which schools may discriminate
on the basis of sex.  Second, Defendants argue that we should defer to the school's
dress code as a matter of Chevron deference.  See Chevron U.S.A., Inc. v. Nat. Res.
Def. Couns., 467 U.S. 837, 842 (1984).
        We reject these arguments for three reasons.  First, Defendants undermined
these arguments by conceding that our decision under Title IX should mirror our
decision under the Equal Protection Clause.  Second, Defendants have not identified
a provision of Title IX that permits their dress code.  Finally, it is well-settled that
courts should only apply Chevron deference where a "statute is ambiguous on the

9

2.

Plaintiff also brings a Title IX retaliation claim.  To state a Title IX retaliation claim, Plaintiff must allege that RMCA "retaliated against him *because* he complained of sex discrimination."  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005).  Plaintiff argues his allegations permit an inference that RMCA escalated the severity of his school discipline because he (and his mother) challenged the dress code.  The district court disagreed, determining that the complaint permitted only one inference: that the school took disciplinary actions because of Plaintiff's dress code violations.  We agree with the district court.

Plaintiff's complaint makes clear that each disciplinary action followed his wearing earrings in violation of RMCA's dress code.  Yet Plaintiff argues that a jury could infer the necessary causation through the proximity of the discipline to the stated concerns about the dress code.  True, in other contexts, we have found a temporal nexus sufficient to state a causal connection.  See, e.g., Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1091 (10th Cir. 2007) (Title VII); Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006) (FMLA).  But, in this case, the facts as Plaintiff alleged them state that he repeatedly violated the dress code, that he was repeatedly told that he needed to comply, and that, when he did not comply, his discipline increased.  Simply stated, nothing in Plaintiff's complaint

---

'precise question at issue.'"  Aposhian v. Barr, 958 F.3d 969, 984 (10th Cir. 2020) (quoting Chevron, 467 U.S. 837, 842 (1984)).  But Defendants have not identified any ambiguity in the text of Title IX.

permits an inference that RMCA sent home, suspended, or disenrolled Plaintiff for anything but his violation of the dress code.  Plaintiff thus does not state a claim for retaliation under Title IX.

IV.

In sum, we REVERSE the district court's order dismissing Plaintiff's claims of sex discrimination in violation of the Equal Protection Clause and Title IX and REMAND for further proceedings.  But we AFFIRM the district court's order dismissing Plaintiff's Title IX retaliation claim.