Richard VISCECCHIA, Jr., Plaintiff,

v.

ALROSE ALLEGRIA LLC, Individually and d/b/a Allegria Hotel, Defendant.

No. 14–CV–6064 (JFB)(SIL).

United States District Court,
E.D. New York.

Signed July 30, 2015.

Derek T. Smith, New York, NY, for Plaintiff.

Jennifer E. Sherven, Keith J. Gutstein, and David Adam Tauster, Woodbury, NY, for Defendant.

### MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Plaintiff Richard Viscecchia, Jr., ("Viscecchia" or "plaintiff") brings this civil rights action against his former employer, Alrose Allegria LLC, individually and doing business as Allegria Hotel ("Hotel" or "defendant"), alleging the following: (1) employment discrimination on the basis of gender in violation of Title VII of the Civil

Rights Act of 1961, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII") and Article 15 of the Executive Law of the State of New York § 296 (the "New York Human Rights Law" or "NYHRL"); and (2) federal and state claims of unlawful retaliation for engaging in activities protected by the aforementioned statutes. Plaintiff seeks actual, compensatory, and punitive damages, attorney's fees and other costs, and equitable relief (namely, reinstatement to his position). Defendant now moves to dismiss the action in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.

For the reasons set forth below, defendant's motion is granted in part, and denied in part. In particular, in the employment context, it is well settled that an employer does not violate Title VII or the NYHRL by requiring short hair on men, but not on women, as part of an overall grooming policy. Thus, to the extent that plaintiff contends that the portion of defendant's policy requiring only male employees to have short hair is inherently discriminatory, that claim must be dismissed as a matter of law. However, plaintiff also claims that defendant selectively enforced the overall hair policy only against men, while permitting women to violate the hair policy in other ways, such as by having streaked hair, without any disciplinary sanctions. Those selective enforcement allegations state a plausible claim of discrimination based upon gender in violation of Title VII and the NYHRL. Thus, defendant's motion to dismiss that portion of plaintiff's federal and state discrimination claims is denied. With respect to the retaliation claim, defendant argues that, because the law is clear that an employer can adopt sex-differentiated grooming policies that require only male employees to have short hair, plaintiff could not have had a good faith, reasonable belief that such policy was discriminatory. Thus, according to defendant, plaintiff's complaint to his employer about the hair policy is not protected activity that could form the basis of a retaliation claim. However, the Court concludes that defendant is reading the Amended Complaint too narrowly, rather than in the light most favorable to plaintiff (as is required under the motion to dismiss standard). Specifically, because plaintiff's alleged complaint to the Hotel about the discriminatory hair policy may have been directed (at least in part) at the selective enforcement of the policy (or may have been understood to include a complaint about selective enforcement of the policy), plaintiff has a plausible retaliation claim that survives a motion to dismiss.

In sum, defendant's motion is granted as to the portion of plaintiff's gender discrimination claim (under Title VII and the NYHRL) that is based on the fact that defendant's hair policy requires short hair on men, while allowing long hair for women. However, the motion is denied as to plaintiff's gender discrimination claim (under Title VII and the NYHRL) regarding alleged *selective enforcement* of the overall hair policy (by allowing women to violate other aspects of the policy without any sanctions). The motion also is denied as to the retaliation claim under Title VII and the NYHRL.

## I. BACKGROUND

### A. Facts

The following facts are taken from the plaintiff's Amended Complaint ("Am. Compl."), and are not findings of fact by the Court. Instead, the Court will assume these facts to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

On or around June 18, 2009, plaintiff began working for the Allegria Hotel as a

line cook. (Am.Compl.¶ 7.) Throughout the course of his employment, plaintiff had long hair. (*Id.* ¶ 8.) The Hotel's hair policy reads as follows:

> **Hair** Hair must be clean, trimmed, well brushed and neat at all times, Extreme styles flowers [sic], colored ribbon's [sic], beaded, braided or streaked hair is not permitted. Color should be maintained at neutral tones. Men's hair must be above the shirt collar. Side burns should not exceed one inch in length and should be neatly trimmed. No other type of hair covering should be worn unless considered part of the uniform.

(*Id.* ¶ 22.) In 2012, the Hotel management directed plaintiff to cut his hair because it was "too long." (*Id.* ¶ 9.) Plaintiff asserts that he complained to the Hotel that its policy on hair length was unlawfully discriminatory towards men. (*Id.* ¶ 10.) On or around October 1, 2013, the Hotel's Human Resource Department issued plaintiff a written warning instructing him to cut his hair in accordance with the Hotel's policy, and notifying him that non-compliance could result in disciplinary action, including potential termination. (*Id.* ¶ 12.) Human Resources gave plaintiff until October 15, 2013 to comply with the warning. (*Id.* ¶ 13.) Plaintiff states that, at the time he received the warning, the Hotel employed females with long hair in comparable positions in the kitchen, who were not similarly reprimanded for violating the hair policy and continued to work at the Hotel. (*Id.* ¶¶ 14, 16.) Plaintiff did not comply with the Hotel's warning and was terminated on or around October 16, 2013. (*Id.* ¶ 18–19.)

Plaintiff asserts that "Defendant's policy was discriminatorily applied to Plaintiff because he is a man and the policy was not equally applied to women." (*Id.* ¶ 23.) Plaintiff also argues that defendant selectively enforced the hair policy, permitting women with "streaked" hair, allegedly in violation of the policy, to continue to work for the Hotel without any disciplinary consequences. (*Id.* ¶ 25.) Specifically, in his opposition to defendant's motion, plaintiff identifies two employees who he asserts had streaked hair in violation of the policy and faced no disciplinary action. (Pl. Opp. at 2–3.)

## B. Procedural History

On or around December 2, 2013 and June 17, 2014, plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") related to the facts alleged in this matter. (Am.Compl. ¶ 32.) The EEOC issued plaintiff a Right to Sue Letter on or around September 29, 2014. (*Id.* ¶ 33.)

On October 16, 2014, plaintiff filed the instant action, and plaintiff filed an amended complaint on January 5, 2015. Defendant moved to dismiss the amended complaint on February 9, 2015. Plaintiff filed his opposition on March 6, 2015. Defendant submitted its reply on March 24, 2015. Oral argument was held on April 29, 2015. This matter is fully submitted.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.2006). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts

to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955).

■ Even after *Twombly* and *Iqbal,* "a complaint alleging workplace discrimination need not allege specific facts establishing a *prima facie* case of discrimination." *Thompson v. ABVI Goodwill Servs.,* 531 Fed.Appx. 160, 161 (2d Cir.2013) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)); *see also Pedrosa v. City of New York,* 13–CV–01890 (LGS), 2014 WL 99997, at *4 (S.D.N.Y. Jan. 9, 2014) (explaining that courts in this circuit continue to follow *Swierkiewicz's* holding that a plaintiff need not allege specific facts es-

tablishing *prima facie* case of employment discrimination to survive a motion to dismiss). However, "the pleading must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Thompson v. N.Y. State Office of Mental Retardation & Developmental Disabilities,* No. 13–CV–91 (DNH/DEP), 2014 WL 202656, at *3 (N.D.N.Y. Jan. 16, 2014) (quoting *Swierkiewicz,* 534 U.S. at 512–15, 122 S.Ct. 992).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003) (internal citations omitted); *see Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("[T]he district court … could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York,* No. 04–CV–1859 (JG), 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (court can consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

### III. DISCUSSION

In the instant matter, defendant argues the alleged instances of discrimination and retaliation, as pled, do not give rise to

actionable claims under Title VII and the NYHRL. For the reasons set forth below, the Court holds: (1) the gender discrimination claim based upon the theory that gender-differentiated hair length requirements are inherently discriminatory fails as a matter of federal and state law; (2) the gender discrimination claim based upon the theory that the hair policy is selectively enforced by the Hotel in a manner that discriminates against male employees (because male employees are disciplined for long hair while females are not disciplined for other violations of the hair policy, such as having "streaked hair") states a plausible claim under federal and state law; and (3) a claim of retaliation based upon alleged complaints about selective enforcement of various aspects of the hair policy is plausible under federal and state law.

### A. Discrimination Claims under Title VII and New York Human Rights Law

■ Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that '(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving

rise to an inference of discrimination.'" *Chang v. N.Y.C. Dep't for the Aging*, No. 11 Civ. 7062(PAC)(JLC), 2012 WL 1188427, at *4 (S.D.N.Y. Apr. 10, 2012) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir.2010)), *report & recommendation adopted*, 2012 WL 2156800 (S.D.N.Y. June 14, 2012).

■ Plaintiff offers two theories to support his claim that defendant's hair policy constitutes gender discrimination under Title VII and the NYHRL.[1] First, he argues that defendant's policy is "inherently discriminatory," because it prescribes different hair lengths for men and women. (*See* Pl. Opp. at 9 ("Defendant's grooming policy is selective and it *does* give rise to a separate treatment claim. Defendant applied an inherently discriminatory hair length policy by singling out Plaintiff for the length of his hair, and terminating him. Defendant did not apply the same sanction to long-haired women, who continued to work alongside Plaintiff even after he received a warning from Defendant.") (emphasis in original).) Second, plaintiff argues that defendant selectively enforced the hair policy, permitting women to violate the policy in other respects (*i.e.*, in ways unrelated to length of hair), but not men. (*See* Pl. Opp. at 3 ("Defendant clearly failed to evenly apply their grooming policies for all employees, and targeted Plaintiff because he is a man. Plaintiff as a man, was disciplined for violating the hair policy, while women who violate the hair policy are not.").) For the purposes of adjudicating defendant's motion to dis-

---

1. In addition to alleging claims under Title VII, plaintiff alleges discrimination under the NYHRL. The same standards governing Title VII discrimination claims generally apply to claims under the NYHRL. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir.2010); *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) ("New York courts examine claims under [the NYHRL] with the same analytical lens as corresponding Title VII-based claims."); *Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir.2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714–15 (2d Cir.1996); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992). Therefore, the Court will analyze the motion to dismiss both claims together.

miss, the Court will evaluate each of the plaintiff's two theories in turn.

### 1. Gender–Differentiated Hair Length Standards

■ In response to plaintiff's first theory of discrimination, namely that gender-differentiated hair length requirements are inherently discriminatory, defendant contends that dismissal is warranted because, under Title VII and state law, "[i]t is well established that employers can prescribe different grooming standards for male and female employees, including those standards concerning hair length." (Def. Mem. at 1.) As set forth below, the Court agrees.

The Second Circuit has clearly held, in the employment context, that "'requiring short hair on men and not on women does not violate Title VII.'" *Tavora v. New York Mercantile Exch.*, 101 F.3d 907, 908 (2d Cir.1996) (quoting *Longo v. Carlisle DeCoppet & Co.*, 537 F.2d 685, 685 (2d Cir.1976)); *see also Boyce v. Gen. Ry. Signal Co.*, No. 99–CV–6225T, 2004 WL 1574023, at *2 (W.D.N.Y. June 10, 2004) (citing *Tavora* and holding that "discrimination based upon a male employee's hair length [does not] give[ ] rise to an action under Title VII of the Civil Rights Act."); *Seitz v. O'Connor*, No. 95 CV 0122(SJ), 1995 WL 745012, at *2 (E.D.N.Y. Nov. 30, 1995) (finding that a police department policy of requiring short hair on men, but not women, does not violate Title VII). In fact, as courts in this circuit have repeatedly recognized,[2] every federal court of appeals that has addressed the issue has similarly found that prescribing gender-differentiated hair length standards does not create an actionable claim under Title VII. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) ("differing hair length standards for men and women do not violate Title VII"); *Barker v. Taft Broad. Co.*, 549 F.2d 400, 401 (6th Cir.1977) ("The prohibition of sex discrimination must be interpreted in light of the purpose and intent of Congress in enacting the Civil Rights Act of 1964. Employer grooming codes requiring different hair lengths for men and women bear such a negligible relation to the purpose of Title VII that we cannot conclude they were a target of the Act."); *Earwood v. Cont'l Se. Lines, Inc.*, 539 F.2d 1349, 1351 (4th Cir.1976) ("a sex-differentiated hair length regulation that is not utilized as a pretext to exclude either sex from employment does not constitute an unlawful employment practice as defined by Title VII"); *Knott v. Mo. Pac. Ry. Co.*, 527 F.2d 1249, 1249, 1252 (8th Cir.1975) (concluding that "a private employer's grooming code [that] impos[es] limits on the hair length of male employees while at the same time not imposing similar limits on the hair length of female employees [does not] constitute[ ] sex discrimination in violation of ... Title VII" and noting that "minor differences in personal appearance regulations that reflect customary modes of grooming do not constitute sex discrimination"); *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1091 (5th Cir.1975) ("a hiring policy that distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his business

**2.** *Boyce*, 2004 WL 1574023, at *2; *Romanello v. Shiseido Cosmetics America Ltd.*, No. 00 Civ. 7201(JGK), 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002) (noting that courts have consistently "upheld difference in appearance standards for men and women because '[i]t would be absurd to requirement women and men to meet the same ... standards.'" (quoting *Marks v. Nat'l Comm. Assoc., Inc.*, 72 F.Supp.2d 322, 330 n. 8 (S.D.N.Y.1999))); *Seitz*, 1995 WL 745012, at *2 (noting that the argument "has been rejected by all federal courts of appeals that have considered it.").

than to equality of employment opportunity"); *Baker v. Cal. Land Title Co.*, 507 F.2d 895, 896, 898 (9th Cir.1974) (noting that the Court was "not persuaded that tolerance of a certain hair length for female employees but not for males 'discriminates' on the basis of sex within the meaning of Title VII" and concluding that "a private employer may require male employees to adhere to different modes of dress and grooming than those required of female employees and such does not constitute an unfair employment practice within the meaning of [Title VII]"); *Dodge v. Giant Food, Inc.*, 488 F.2d 1333, 1337 (D.C.Cir.1973) (upholding gender-differentiated hair length standards and noting that "[w]e do not believe that Title VII was intended to invalidate grooming regulations which have no significant effect upon the employment opportunities afforded one sex in favor of the other.").

Courts, after considering "[t]he prohibition of sex discrimination ... in light of the purpose and intent of Congress in enacting the Civil Rights Act of 1964," have consistently concluded that "[e]mployer grooming codes requiring different hair lengths for men and women" were not intended to be covered by the Act, because they "bear such a negligible relation to the purpose of Title VII." *Barker*, 549 F.2d at 401. Specifically, "courts have determined that [in enacting Title VII] 'Congress was concerned only to promote equal employment opportunity,'" and that "hairstyle specifications, dress-codes, and other grooming policies ... do not affect an individual's opportunity to obtain employment." *Wiseley v. Harrah's Entm't, Inc.*, No. 03–1540(JBS), 2004 WL 1739724, at *4 (D.N.J. Aug. 4, 2004) (quoting *Barker*, 549 F.2d at 404). "[O]ne's personal appearance and dress is sufficiently within one's control such that it is easily alterable, while Title VII aims at policies that specifically discriminate on the basis of immutable characteristics that are a fundamental aspect of that person." *Id.* (citing *Dodge*, 488 F.2d at 1337). In fact, the Second Circuit has emphasized that "hair length policies are not within the statutory goal of equal employment, or [in the alternative] that such employment policies have only a *de minimis* effect [on employment opportunities]." *Tavora*, 101 F.3d at 908 (citations omitted); *see also Boyce*, 2004 WL 1574023, at *2 ("[E]very other federal court of appeals that has considered the issue of male hair-length policies has upheld such policy, finding either that the policy did not conflict with the statutory goal of equal employment or that it had only a *de minimis* effect on employment opportunities.").[3]

New York state courts have likewise found that hair policies that differentiate between male and female employees are not unlawfully discriminatory in violation of the NYHRL. *See Page Airways of Albany, Inc. v. N.Y. State Div. of Human Rights*, 39 N.Y.2d 877, 878, 386 N.Y.S.2d 223, 352 N.E.2d 140 (N.Y.1976) ("[W]e do not believe that an employer unlawfully discriminates when he establishes a reasonable grooming policy which may be said to differentiate between male and female employees ... There is no indication in the record before us that [the employer's grooming] regulations were the result of an invidious intention to affect, to harass or to deprive one sex of equal opportunity or treatment."); *Delta Air Lines v. N.Y. State Div. of Human Rights*, 229 A.D.2d 132, 140, 652 N.Y.S.2d 253 (N.Y. 1st Dep't 1996) (concluding that the employer's use

---

**3.** This line of authority directly contradicts plaintiff's assertion that "by allowing women to have long hair and men not, Defendant is effectively preventing men from equal employment at their place of business." (Pl. Opp. at 11.)

of weight standards in and of itself did not constitute sex discrimination, even though it differentiated between male and female employees).

■■■ However, although Courts "have long recognized that companies may differentiate between men and women in appearance and grooming policies," the "policy imposed ... [may not] create an 'unequal burden' for the plaintiff's gender." *Jespersen v. Harrah's Op'g Co.*, 444 F.3d 1104, 1110 (9th Cir.2006) (sustaining make-up requirement for female employees in absence of objective evidence that such requirement imposed unequal burden on women). In other words, sex-differentiated grooming requirements must "not unreasonably burden one gender more than the other." *Id.* "Where ... policies are reasonable and are imposed in an evenhanded manner on all employees, slight differences in the appearance requirements for males and females have only a negligible effect on employment opportunities." *Knott*, 527 F.2d at 1252; *see also Jespersen*, 444 F.3d at 1110 ("Not every differentiation between the sexes in a grooming and appearance policy creates a 'significantly greater burden of compliance.' ") (citations omitted); *Frank v. United Airlines, Inc.*, 216 F.3d 845 (9th Cir.2000) ("An appearance standard that imposes different but essentially equal burdens on men and women is not disparate treatment.").

■■ Specifically, where an employer's "hair length requirement for male employees is part of a comprehensive personal grooming code applicable to all employees," even though "no hair length restriction is applicable to females," the policy is consistent with Title VII as long as the it requires "all employees [to] conform to certain standards of dress" and "such policies are reasonable and are imposed in an evenhanded manner on all employees." *Knott*, 527 F.2d at 1252. In evaluating a sex-differentiated grooming policy that imposed requirements for both male and female employees, the Fifth Circuit concluded that "each sex [was] treated equally" under the policy, as "both sexes [were] being screened with respect to a neutral fact, i.e., grooming in accordance with generally accepted community standards of dress and appearance." *Willingham*, 507 F.2d at 1092 (5th Cir.1975) (en banc) (internal quotation marks and citations omitted).[4]

In this case, the defendant's hair policy (as contained paragraph 22 of the Amended Complaint) clearly imposes grooming requirements on both male and female employees. Male employees are required to have hair cut "above the shirt collar" and side burns less than "one inch in length and ... neatly trimmed." (Am.Compl. ¶ 22.) Female employees are also bound by the remaining provisions of the policy, including having hair "clean, trimmed, well brushed and neat at all times" and the prohibition against "[e]xtreme styles" and against "flowers, colored ribbon's [sic], beaded, braided or streaked hair." (*Id.*) Female and male employees are similarly required to maintain their hair color "at neutral tones." (*Id.*) The Court notes that

---

4. Courts have recognized that "an employer is permitted to exercise its legitimate concern for the business image created by the appearance of its employees: 'Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance.' " *Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 181 (3d Cir.1985) (quoting *Fagan v. National Cash Register Co.*, 481 F.2d 1115, 1124–25 (D.C.Cir.1973).)

these portions of the policy apply to all employees, whether male or female. Thus, it is clear that the hair length requirement is part of a comprehensive personal grooming code regarding hair that is applicable to all employees.[5]

■ As a result, here, the Court concludes that these requirements are comparable and do not appear to be more onerous for one gender than the other.[6] "While those individual requirements differ according to gender, none on its face places a greater burden on one gender than the other. Grooming standards that appropriately differentiate between the genders are not facially discriminatory."

*Jespersen*, 444 F.3d at 1109–10. Accordingly, to the extent that plaintiff grounds his gender discrimination claim on the fact that the Hotel's hair length policy requires short hair for men but not for women, any claim under Title VII or the NYHRL solely based on such a theory of liability fails as a matter of law, and does not survive a Rule 12(b)(6) motion to dismiss.

### 2. Selective Enforcement

Although the challenge to the long hair prohibition in the hair policy for male employees as "inherently discriminatory" cannot proceed, plaintiff does not exclusively rely on this argument to support his Title

5. To support his argument that gender-differentiated hair length standards are inherently discriminatory, plaintiff cites to *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569 (7th Cir.2014), which involved a school district's grooming policy requiring all boys playing basketball to maintain short hair, but imposing no similar requirement for girl basketball players. In that case, the Seventh Circuit held that the policy violated the equal protection clause and Title IX. The Court notes, first, that that case did not involve employment discrimination claims under Title VII. However, the Seventh Circuit noted that it was drawing upon principles from Title VII that "sex-differentiated standards consistent with community norms may be permissible to the extent they are part of a comprehensive, evenly-enforced grooming code that imposes comparable burdens on both male and females alike." *Id.* at 581. Indeed, the Seventh Circuit acknowledged that a number of Title VII cases "sustained workplace hair-length restrictions on male but not female employees," but noted that "each of those cases relied on the fact that female employees, although not subject to hair-length restrictions, were subject to comparable grooming requirements." *Id.* The crucial factor that led the Seventh Circuit to deem the policy discriminatory was that the school district only had a hair-length policy in place for the boys and the district failed to show that it was "just one component of a comprehensive grooming code that imposes comparable although not identical demands on both male

and female athletes." *Id.* at 580. The Seventh Circuit concluded that "the hair-length policy, being applicable only to boys teams, dr[ew] an explicit gender line" and as a result "[t]he intent to treat boys differently from girls [was] ... evident from the one-sided nature of the policy." *Id.* at 579. In this case, unlike *Hayden*, defendant's hair policy imposes grooming requirements on both male and female employees, which the Court has explained above are comparable. Accordingly, even though the case did not involve a Title VII claim, to the extent plaintiff attempts to rely on it, the Court finds that the reasoning in that opinion is consistent with and in fact supports the Court's conclusion in the instant action.

6. Conducting a similar analysis, the District of New Jersey in *Wiseley* evaluated a gender-differentiated grooming policy which "contain[ed] restrictions for both sexes as to dress and appearance," including "language that required all employees to wear clean and neatly kept hair and that prohibited 'extreme styles, colors, or shaved designs'" and "the policy forbade women from wearing mustaches, beards or other facial hair." *Wiseley*, 2004 WL 1739724, at *5 (internal citations omitted). The Court concluded that "the policies [did] contain sex-specific requirements, but the policies target[ed] both male and female employees in an even-handed manner, and, at least on their face, [were] not discriminatory within the meaning of Title VII and in violation of the Plaintiff's civil rights." *Id.*

VII and NYHRL claims. Plaintiff also asserts that defendant's hair policy is selectively enforced in a manner that discriminates against male employees. Though plaintiff concedes that a number of cases permit employers to require different grooming codes for male and female employees consistent with Title VII, he contends that "[t]he employer's policy must be equally enforced and applied, and no more burdensome for men than for women even if it may have different requirements for men and for women." (Pl. Opp. at 7.) Moreover, in this case, he alleges in the Amended Complaint that the hair policy instituted by defendant was not equally enforced as to women because, among other things, "women are allowed to violate the Hair Policy without reprimand and are allowed to continue working at Defendant." (Am.Compl.¶ 24.) As an example, plaintiff avers that "certain women who work for [d]efendant have streaked hair, in violation of [d]efendant's Hair Policy, and yet continue to work without any disciplinary action against them." (Id. ¶ 25.) As a result, plaintiff contends that "[d]efendant's *entire* hair policy was unevenly enforced because women are free to violate it and men are not and that is unlawful discrimination." (Pl. Opp. at 9.) (emphasis in original)

Plaintiff is correct that, though hair length policies that differentiate based on sex are permissible under Title VII, the grooming policies still must be "enforced evenhandedly between men and women, even though the specific requirements may differ." *Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175, 181 (3d Cir.1985); *see also Wiseley,* 2004 WL 1739724, at *5 ("Sex-specific grooming standards are permissible under Title VII so long as the policies and standards are 'enforced evenhandedly.' ... A policy is considered evenhanded for the purposes of Title VII if it contains similar restrictions for both sex-

es") (citations omitted). Courts have found that, even if a policy is facially non-discriminatory, if it is not enforced uniformly across gender lines, a valid discrimination claim may exist. *See Wiseley,* 2004 WL 1739724 (dismissing plaintiff's claim that gender-differentiated grooming policy was facially discriminatory, but permitting claim that policy was discriminatorily enforced to proceed).

In fact, in dismissing Title VII claims of discrimination based on gender-specific grooming standards, courts have acknowledged that claims could have survived dismissal, if the plaintiff had "allege[d] that [the] grooming policy was unevenly applied" or "contend[ed] that as between male and female employees the applicable grooming standards are unevenly enforced." *Kleinsorge v. Eyeland Corp.,* No. CIV. A. 99–5025, 2000 WL 124559, at *2 (E.D.Pa, Jan. 31, 2000) (finding that an employer's policy prohibiting male, but not female, employees from wearing earrings was not discriminatory under Title VII, because an "employer has a right to establish and enforce different grooming requirements [for male and female employees].") Specifically, a plaintiff may maintain a Title VII gender discrimination claim based on sex-differentiated grooming standards, "which [are] not prohibited," by "pointing to ... evidence in the record that supports [his] allegation that the defendants' grooming standards were applied in a discriminatory manner." *Romanello v. Shiseido Cosmetics America Ltd.,* No. 00 Civ. 7201(JGK), 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002).

█ For instance, courts have found that a valid claim of gender discrimination may exist when a plaintiff alleges that "women employees who failed to comply with the code provisions relating to hair style were not discharged," or that "the

employer refused to hire men who did not comply with the code, but did hire women who were not in compliance." *Barker*, 549 F.2d at 401. Specifically, failure to enforce provisions of a grooming policy against one gender can give rise to a cognizable gender-discrimination claim under Title VII. *Wiseley*, 2004 WL 1739724, at *7 (noting that though a policy with sex-differentiated grooming requirements is facially nondiscriminatory, the fact "[t]hat the policy was never enforced against the female employees is certainly relevant to the Plaintiff's whole Title VII claim.")

■ Here plaintiff alleges that defendant's hair policy was selectively enforced in a discriminatory manner and alleges in the Amended Complaint, "[f]or example only, certain women who work for Defendant have streaked hair, in violation of Defendant's Hair Policy, and yet continue to work without any disciplinary action against them." (Am.Compl. ¶ 25.) In fact, in his opposition papers, plaintiff identifies two female employees, (and provides screenshots of their LinkedIn profiles including their photographs), who he alleges have streaked hair in violation of the policy and were not disciplined. (Pl. Opp. at 8; Exhibit D to Pl. Opp.) Plaintiff also asserts that one of these women continues to work for the Hotel. (*Id.*)

In response, defendant contends that plaintiff's selective enforcement argument fails, because the photos submitted "demonstrate only that the women did not violate Defendant's comprehensive grooming policy." (Def. Reply at 1.) Defendant asserts that plaintiff must show that the " 'streaked hair' was 'extreme' and not, for example, highlights or other acceptable

hairstyles that do not violate the policy." (Def. Mem. at 8.) In particular, as to the two female employees identified in plaintiff's opposition (only by way of example) as having "streaked hair" in violation of the policy, defendant argues that the photos demonstrate that the female employees only have "natural looking highlights" that are not extreme, and do not violate the policy. (Def. Reply at 6.)

Plaintiff, on the other hand, disagrees with defendant's assertion, noting that the plain language of the hair policy does not require that streaks be extreme in order to violate the policy. (Pl. Opp. at 9.) The text of the policy does not appear to prohibit only extreme streaks; rather, it states: "Extreme styles flowers, colored ribbon's [sic], beaded, braided or streaked hair is not permitted. Color should be maintained at neutral tones." (Am.Compl. ¶ 22.)

The Court notes that defendant also counters plaintiff's selective enforcement argument by contending that plaintiff fails to argue "that Defendant applied the provision concerning 'streaked hair' differently to men and women," and only makes a "bald allegation that the 'streaked hair' provision was not enforced with respect to 'certain' female employees' " and that the "hair length provision was enforced with respect to him, a male." (Def. Mem. at 8.)

Although defendant urges the Court to decide these factual questions regarding "streaked hair" and the defendant's enforcement of the hair policy as it relates to alleged violations by female employees of that policy or other aspects of the policy, these issues cannot be resolved at the motion to dismiss stage of this case.[7] Plain-

7. The Court notes that plaintiff made clear in the Amended Complaint that the "streaked hair" issue is only an example of defendant's alleged uneven enforcement of the hair policy. (Am.Compl. ¶ 25.) Thus, the two female employees identified in the plaintiff's opposition papers do not appear to be the only instances of selective enforcement that plaintiff is alleging.

tiff has adequately pled in the Amended Complaint that, unlike plaintiff who was terminated for violating the hair policy, women violated other aspects of the hair policy (including, among other things, the "streaked hair" provision) without reprimand or disciplinary action. That allegation is all that is necessary in this case to articulate a plausible gender discrimination claim based upon selective enforcement of the hair policy as written, between male and female employees. Plaintiff is not required to plead evidentiary details, nor can the Court resolve factual issues at this stage as to the whether the hair policy was violated by female employees (including whether certain female employees had impermissible "streaked hair" as opposed to permissible "highlighted hair"), or whether they received different treatment for any such violations than male employees, or whether any such differential treatment is evidence of gender discrimination in this case.

In sum, the Court concludes that plaintiff has adequately pled a plausible gender discrimination claim, alleging that defendant selectively enforced its existing hair policy in a discriminatory manner based upon gender. Accordingly, that portion of plaintiff's gender discrimination claims under Title VII and the NYHRL survives defendant's motion to dismiss under Rule 12(b)(6).

## B. Retaliation Claims

■■■ With respect to the retaliation claim, "Title VII forbids an employer to retaliate against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII." [8] *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir.2006); *see also* 42 U.S.C. § 2000e–3(a) (making it unlawful

"for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII].") Generally, in order to establish a prima facie case of retaliation, a plaintiff must demonstrate "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir.2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir.1996)); *see also Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012); *Patane*, 508 F.3d at 115. For his claims to survive the instant motion to dismiss, plaintiff need only provide defendants with fair notice of his retaliation claims and the grounds upon which such claims rest. *See Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992. As set forth below, the Court finds that plaintiff has articulated a plausible retaliation claim under federal and state law.

■■■ In the Amended Complaint, plaintiff alleges that he complained to management that the hair policy was unlawfully discriminatory. (Am.Compl. ¶¶ 9–10.) Plaintiff asserts that "[a]fter [he] protested to Defendant, Plaintiff became the subject of retaliation by the Defendant and was terminated." (*Id.* ¶ 15.) Plaintiff was terminated on or about October 16, 2013. (*Id.* ¶ 19.) There is no question that directly complaining to an employer about a discriminatory policy is sufficient to constitute "protected activity" for purposes of his Title VII and NYSHR retaliation claim. *See, e.g., Borski v. Staten Island Rapid*

---

**8.** These same standards govern plaintiff's NYHRL retaliation claim. *Schiano*, 445 F.3d at 609.

*Transit,* No. 04 CV 3614(SLT)(CLP), 2006 WL 3681142, at *4 (E.D.N.Y. Dec. 11, 2006) ("For Plaintiff's conduct to constitute participation in a protected activity, it is enough that he has made 'informal protests of discrimination, including making complaints to management.'") (quoting *Gregory,* 243 F.3d at 700–01).

▅▅▅▅ Further, Title VII protects not only those employees who opposed employment practices made unlawful by the statute but also those who have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law" even if those actions did not. *McMenemy v. City of Rochester,* 241 F.3d 279, 283 (2d Cir.2001) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988)); *see also Drees v. Cty. of Suffolk,* No. 06–CV–3298 (JFB)(ETB), 2007 WL 1875623, at *12 (E.D.N.Y. June 27, 2007). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir.1998). Further, a plaintiff's belief "is not reasonable simply because he or she complains of something that appears to be discrimination in some form," rather the complaint or opposition must be "directed at an unlawful *employment practice* of his employer." *Kelly v. Howard I. Shapiro & Assoc. Consulting Eng'rs, P.C.,* 716 F.3d 10, 15 (2d Cir.2013) (internal quotations and citations omitted). A plaintiff must "possess[ ] a good-faith belief that [he] was complaining of conduct prohibited by Title VII or that [his] employers could have understood [his] complaints in this way." *Id.* at 16.

The focus of defendant's argument on the retaliation claim is that plaintiff could not have had the requisite objective, good faith belief that the defendant's hair policy was unlawfully discriminatory in violation of Title VII or the NYHRL. (Def. Mem. at 9.) In particular, defendant asserts that, because "it is well established that grooming polices that have differing standards for male and females do not constitute sex discrimination ... plaintiff could not held an objectively reasonable belief that he was being discriminated against on the basis of his sex, and defendant could not reasonably have understood that the Plaintiff's alleged complaint was directed at conduct prohibited by Title VII or State Law." (*Id.* at 10–11) (citations omitted).

Defendant cites to *Harper v. Blockbuster Entm't,* 139 F.3d 1385 (11th Cir.1998) to support its argument. In *Harper,* male plaintiffs brought a Title VII claim for sex discrimination and unlawful retaliation against their former employer after they were allegedly terminated because they refused to cut their hair to comply with their employer's grooming policy. In that case, the Eleventh Circuit affirmed the district court's dismissal of the Title VII unlawful discrimination claims, noting, as we did above, that different hair length standards for male and female employees do not violate Title VII. With respect to the retaliation claim, the Court of Appeals explained that "it is insufficient for a plaintiff to allege his belief [that the policy was discriminatory] was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." 139 F.3d at 1386 (internal quotations and citations omitted). The Eleventh Circuit further noted that "[t]he reasonableness of the plaintiffs' belief in this case is belied by the unanimity with which the courts have declared grooming policies like [the employer's] non-discriminatory," and ultimately held that "the plaintiffs could not have had an objectively reasonable belief that [defendant's] grooming policy discriminated against them on the basis of their

sex," because they "chose to protest [the] grooming policy despite the existence of long-standing binding precedent holding that such a policy was not discriminatory." *Id.* at 1386–89.

However, unlike the instant action, the plaintiffs in *Harper* did not argue that the employer's hair length policy was selectively enforced. They were solely bringing Title VII and state law claims based on the gender-differentiated hair policies of their employer. The instant matter is distinguishable, as plaintiff also alleges that the defendants failed to enforce the overall policy evenhandedly, and allegedly applied it in a discriminatory manner against male employees. In other words, if an employer were allowing female employees to violate those portions of the hair policy that applied to them with impunity while terminating male employees who violated other aspects of the hair policy, an employee could have a good faith, reasonable belief that such conduct violated both federal and state discrimination laws (for reasons discussed *infra*). Moreover, any employee complaint about such conduct by an employer under those circumstances would constitute protected activity that could form the basis of a retaliation claim.

In the Amended Complaint, plaintiff alleges that he "complained to Defendant that their policy on hair length was unlawfully discriminatory towards men" (Am.Compl. ¶ 10). He does not state that his complaint to the employer was limited to one of "inherent discrimination" based upon hair length, as opposed to discrimination based upon selective enforcement. In other words, it is plausible—depending upon the nature of the conversation between plaintiff and the employer, and circumstances surrounding that conversation—that plaintiff's complaint about unlawful discrimination regarding the hair policy could have in-

cluded, or have been understood by the defendant to include, a complaint about selective enforcement of the overall hair policy. Again, any resolution of that factual issue must await the completion of discovery.

In sum, the complaint gives defendant notice of the bases for plaintiff's retaliation claim and states a plausible claim for retaliation. As such, plaintiff has adequately pled his retaliation claims, and the Court denies defendant's motion to dismiss plaintiff's Title VII and NYHRL retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is granted in part, and denied in part. Specifically, defendant's motion is granted as to the portion of plaintiff's gender discrimination claim (under Title VII and the NYHRL) that is based on the fact that defendant's hair policy requires short hair on men, while allowing long hair for women. However, the motion is denied as to plaintiff's gender discrimination claim (under Title VII and the NYHRL) regarding alleged selective enforcement of the overall hair policy (by allowing women to violate other aspects of the policy without any sanctions). The motion also is denied as to the retaliation claim under Title VII and the NYHRL.

SO ORDERED.